John B. Meek and Taylor Vinson, Scherr, Meek & Vinson, Huntington, W. Va., for plaintiffs.

Edwin W. Conley, Fitzpatrick, Huddleston & Bolen, Huntington, W. Va., for defendants.

**John CALVERT and Eunice Calvert, Plaintiffs,**

v.

**'T. Edward YOUNG, Philip E. Rice, Dorothy M. Buzek and Donald B. Kelly, Partners doing business as Black Diamond Fruit & Produce Company, and Burgess Rowe, Defendants.**

**Civ. A. No. 1071.**

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 19, 1961.

HARRY E. WATKINS, District Judge.

This is an automobile accident case tried by the Court without a jury. John Calvert and Eunice Calvert, the plaintiffs in this action, are husband and wife and reside in Proctorville, Ohio. All defendants reside in Cabell County, West Virginia, except Burgess Rowe, who resides in Wayne County, West Virginia. The defendants T. Edward Young, Philip E. Rice, Dorothy M. Buzek and Donald B. Kelly are partners doing business as Black Diamond Fruit & Produce Company.

The accident in question occurred July 28, 1960, at approximately 1:30 p. m., at the intersection of U. S. Route 60 with Fourteenth Street (Oak Street) in the City of Kenova, West Virginia. At that point U. S. Route 60 is a four lane highway of concrete construction, two lanes eastbound and two lanes westbound. These lanes are separated by a concrete island except in the intersection. Fourteenth Street runs north and south, crossing Route 60, and at this intersection traffic is controlled by an overhead elec-

trical signal light. This traffic light at the scene of the accident was properly installed and was in proper operation at the time of the accident. At the time of the accident the weather was clear and the pavement was dry.

On July 28, 1960, Eunice Calvert was 61 years of age and John Calvert was 67 years of age. John Calvert was driving a 1953 Plymouth 4-door sedan and his wife was riding in the front seat as a passenger. They were proceeding west over Route 60 and traveling from the direction of Huntington and going toward Catlettsburg, Kentucky.

At the place and time of the accident defendant, Burgess Rowe, age 32, an employee of Black Diamond Fruit & Produce Company, while acting within the scope of his employment, was driving a 1958 International 2-ton van-body truck, with something like a half load of produce, in a westerly direction on Route 60, i. e., from Huntington toward Catlettsburg, Kentucky. He was alone in the truck and was traveling immediately to the rear of the Plymouth automobile occupied by the plaintiffs, both vehicles traveling in the same direction.

The collision occurred when the front of defendant's truck collided with the rear of the Plymouth. Burgess Rowe, the driver of the truck, was not injured. Both Eunice and John Calvert were removed from the scene of the accident by ambulance and were taken to St. Mary's Hospital in Huntington, W. Va. John Calvert was treated and released. Eunice Calvert was admitted to the hospital and remained there from July 28, 1960, to September 5, 1960, six weeks and three days. As a result of this accident John Calvert incurred towing and medical expenses in the amount of $97.07, and the damage to his car amounted to $150.00. Eunice Calvert incurred medical expenses totalling $1102.52. All of the foregoing facts have been agreed upon by the parties.

John Calvert, being retired, was kept from no gainful employment by reason of the accident. Eunice Calvert made $15.00 per week babysitting. She was unable to do this from the time of the accident (July 28, 1960) until December 2, 1960, a total of eighteen weeks or a loss of $270.00 in wages. During the hospitalization and recuperation of his wife at home, John Calvert was required to do all the domestic chores which would normally be done by his wife.

As to the specific details of the accident and damages resulting therefrom, the Calvert car was traveling between 25 and 30 miles per hour and was 25 to 30 feet east of the intersection when John Calvert first observed the traffic light change to yellow. Earlier he had observed that the light was green, and he knew that the change to yellow meant that the next change would be to red. Upon seeing this change to yellow, he applied his brakes and gradually coasted to a stop as the light turned red. The Calvert car was fully stopped at the red light for at least five seconds when the truck driven by Rowe crashed into the rear of the Calvert car. Rowe admitted that when he was about three car lengths (approximately 54 feet) back, approaching the traffic light, he saw the light change from green to yellow. When he observed this change he estimated that the car in front of him, the Calvert car, was about 27 feet from the light. He admitted that when he saw the light turn from green to yellow, he could have applied his brakes and stopped without hitting the Calvert car. He stated that he did not slow down because he thought that both he and the Calvert car could make it through the intersection before the light changed to red. He stated that he thought the Calvert car was going, and should have gone, on through the intersection.

There are three main points of conflict in the testimony about the accident, two of which are of no consequence. The Calverts said they were in the left lane of the two-lane portion of the highway used by westbound traffic when they were hit, and that their car was propelled about 60 feet across the intersection. Rowe testified that the collision occurred in the right lane and that the car only

went about 20 feet across the intersection. But there is no question that both vehicles were in the same lane when the collision occurred and that the Calvert car was knocked some distance through the intersection. The discrepancies as to details are, therefore, of little importance. The final point of conflict concerns the operation of the brake lights on the Calvert car. The Calverts testified that these lights were in perfect working order, while Rowe testified that the brake lights never came on. This was the main reason Rowe assigned for not thinking that the Calverts were going to stop. This explanation avails him little, however, since, notwithstanding the condition of the brake lights, the traffic light at the intersection gave a clear indication that a stop would be required, and he could, or should have, seen that the Calvert car was slowing down to stop in obedience to the overhead traffic control light. He had no reasonable cause to believe that the Calvert car would take the chance of running through a yellow light that would probably be red before that car reached the intersection.

When the collision occurred the Calvert car was knocked some distance through the intersection. The door on Eunice Calvert's side came open and she was partially thrown out of the car with her shoulders and head on the concrete and her feet still in the car. Eunice Calvert sustained a transverse fracture of the body of the sternum, or the breastbone, bruises and contusions on her neck, shoulders, knees and ankles, a cervical osteoarthritis swelling of the knee from contusion, and pain about the cervical spine due to the collision's aggravation of a pre-existing arthritic condition in that area, i. e., her neck and cervical vertebrae had been afflicted by an arthritic condition due to old age degenerative processes, and the jolt of the rear end collision caused an increase in pain there. The latter is described by one doctor as a "whiplash" injury. Her main injury was the fracture of the breastbone which caused considerable pain and produced tenderness even after the fracture healed.

She suffered constant pain which was aggravated to very sharp pain upon deep breathing and coughing, and it was necessary to give her strong drugs, such as narcotics and codeine at first. As the intensity of her pain decreased, the dosage of that particular drug was cut down, or changes were made to other drugs less powerful. Upon her discharge from the hospital (September 5, 1960), the breastbone had achieved a 90 per cent healing, but she continued to experience discomfort for a period of four weeks, after which there were no residual effects. She had a good recovery. Eunice Calvert testified that she is now very nervous, is unable to rest well, and is subject to uncontrollable crying spells as a result of the collision.

John Calvert sustained minor abrasions and contusions of both legs and contusions of his chest as a result of the accident. All of these injuries have healed without complications or residual effect. On October 11, 1960, he complained of weight loss, extreme irritability, nervousness, and severe headaches in the left temporal region; however, it can not be said, with a reasonable degree of medical certainty, that these symptoms came from the accident of July, 1960. The weight loss and nervousness are not recoverable elements of damage since the evidence fails to adequately tie these matters to the accident itself. It is therefore unnecessary to decide whether they would be recoverable elements of damage if direct causation could be shown.

■■■■ Defendant, Burgess Rowe, was negligent in assuming that the Calvert car would try to pass through the intersection before the traffic light changed to red, and in further deciding that he (Rowe) would do likewise. Calvert simply obeyed the law. He saw a traffic light in the process of changing to red, and he brought his car to a stop in obedience to this traffic light. While the car was completely stopped for a red light, as under the law it had to be, it was struck from the rear by a defendant who would have been able to avoid the collision had he not decided to try to "beat"

the light and had he not further assumed that Calvert would do the same. In short, it would be difficult to find conduct more unbecoming the ordinary prudent person under the circumstances. The conduct of Burgess amounted to gross negligence which caused damages and injuries to both plaintiffs. Neither of the plaintiffs were guilty of contributory negligence. Since the Calverts sustained damages that proximately resulted from the negligence of defendant, Rowe, it is the judgment of this Court that plaintiff John Calvert recover the sum of $2150.00, and plaintiff Eunice Calvert recover the sum of $7100.00 from the defendants, and their costs in this action. The Court finds these amounts to be fair and reasonable compensation for the injuries and damages sustained.

The above opinion constitutes the findings of fact and conclusions of law of the Court.